## LYNN v. BROWN et al.

No. 2608. Opinion Filed May 27, 1913.

(132 Pac. 810.)

INDIANS—Exemption—Property Subject—Indian Allotment. The Act of Congress of June 28, 1906, c. 3572, 34 St. at L. 539, entitled "An act for the division of the lands and funds of the Osage Indians in Oklahoma Territory, and for other purposes," being a complete and special act, and containing no provision for the exemption of moneys borrowed and secured by mortgage on the surplus lands of an allottee of the said tribe, executed after the issuance of the certificate of competency provided for therein, the same are not exempt from the payment of a debt of the allottee, although contracted prior to the issuance of patent.

(Syllabus by the Court.)

Vol. 38—14.

*Error from District Court, Osage County;*
*R. H. Hudson, Judge.*

Action by Ware G. Lynn against Hattie B. Brown and others. Judgment for defendants, and plaintiff brings error. Reversed and remanded, with instructions.

*Grinstead, Mason & Scott,* for plaintiff in error.
*Leahy & MacDonald,* for defendants in error.

DUNN, J. The case presents error from the district court of Osage county. On October 15, 1910, plaintiff in error as plaintiff commenced his action against the defendants in error, Hattie B. and Herbert Brown, and caused garnishment summons to issue to the First National Bank of Pawhuska as garnishee; in due time said garnishee answered, admitting it held funds· of the said Hattie B. Brown in the sum of $862; thereafter and on the 30th day of January, 1911, the said Hattie B. Brown filed her motion in said cause to discharge said garnishee; this motion came on for hearing on the 28th day of April, 1911, and was by said court sustained; contending that the court committed error in sustaining said motion and discharging said garnishee, plaintiff in error brings the cause to this court for review.

All questions of practice are waived, and there is presented to this court for its determination the question of whether the said money was subject to garnishment, it appearing that the defendant in error Hattie B. Brown is an Osage Indian, that she received her certificate of competency on the 24th day of May. 1910, effective 30 days thereafter in accordance with the provisions of the Osage allotment act and the rules and regulations promulgated by the Secretary of the Interior; (3) that the debt sued on was contracted before said defendant received her certificate of competency; and (4) that the indebtedness due from the bank to said defendant was the proceeds of a mortgage loan procured upon the surplus lands allottd to her as a member of the Osage Tribe

of Indians.    Plaintiff in error to recover relies upon the provisions of the Osage Allotment Act, c. 3572, 34 St. at L. 539, approved June 28, 1906, whereby specific provision is made for the members of the said tribe of Indians for the allotment of their land and to secure certificates of competency; the seventh paragraph of section 2 of which reads as follows:

"That the Secretary of the Interior, in his discretion, at the request and upon the petition of any adult member of the tribe, may issue to such member a certificate of competency, authorizing him to sell and convey any of the lands deeded him by reason of this act, except his homestead, which shall remain inalienable and nontaxable for a period of twenty-five years, or during the life of the homestead allottee, if upon investigation, consideration, and examination of the request he shall find any such member fully competent and capable of transacting his or her own business and caring for his or her own individual affairs:    Provided, that upon the issuance of such certificate of competency the lands of such member (except his or her homestead) shall become subject to taxation, and such member, except as herein provided, shall have the right to manage, control, and dispose of his or her lands the same as any citizen of the United States: Provided, that the surplus lands shall be nontaxable for the period of three years from the approval of this act, except where certificates of competency are issued or in case of the death of the allottee, unless otherwise provided by Congress."

It is the contention of counsel for plaintiff on this statute that the application for the certificate of competency being optional with the allottee, and being granted on a specific finding of the Secretary of the Interior that the allottee is fully competent and capable of transacting his business and caring for his affairs, that his land then becomes subject to taxation, and he has a full right to manage, control, and dispose of the same equally with any other citizen of the United States, and that prior to receiving such certificate of competency, the lands were not subject to the payment of his debts and that such condition continues until the member makes such voluntary application; that he is not only re-

lieved of the restrictions, but also deprived of the protection accorded him by the act, and that the land is thereafter removed from any further control of the federal government, and is subject to the same burdens and liabilities as lands belonging to other citizens of the United States. In support of this position counsel cite decisions by the Supreme Court of the United States to the effect that, except an act of Congress either expressly · or by implication restricts the allottee from dealing with it, the grant of the land presents a complete title in fee simple, and is alienable, and may otherwise be dealt with at the pleasure of the grantee.

Counsel for defendants rely for recovery upon an Act of Congress of June 19, 1902 (32 Stat. at L. 744), which among other things provides:

"In so far as not otherwise specially provided, all allotments in severalty to Indians, outside of the Indian Territory, shall be made in conformity to the provisions of the Act approved February 8, 1887, entitled 'An act to provide for the allotment of lands in severalty to Indians on the various reservations, and to extend the protection of the laws of the United States and the territories over the Indians, and for other purposes' and · other general acts amendatory thereof or supplemental thereto, and shall be subject to all the restrictions and carry all the privileges incident to allotments made under said act and other general acts amendatory thereof or supplemental thereto."

And also the Act Cong. June 21, 1906, 34 St. at L. 325, 327, c. 3504, which provides:

"That the act entitled 'An act to provide for the allotment of lands in severalty to Indains on the various reservations, and· to extend the protection of the laws of the United States and the territories over the Indians, and for other purposes' approved February 8, 1887, be, and is hereby, amended by adding the following: *No lands acquired under· the provisions of this act shall, in any event, become liable to the satisfaction of any· debt contracted prior to the issuing of the final patent in fee therefor.*" ·(Italics ours.)

And said act further provides:

"That no money accruing from any lease or sale of lands held in trust by the United States for any Indian shall become liable for the payment of any debt of, or claim against, such Indian contracted or arising during such trust period, or, in case of a minor, during his minority, except with the approval and consent of the Secretary of the Interior:"

It is insisted by counsel for defendants that this later act controls and governs in the instant case, and that the lands of the allottee not being liable for the satisfaction of the debt, and the money derived from any lease thereon or sale thereof likewise being free from such liability, that within the intent of the statute the money derived from the mortgage on the land would likewise be exempt. Counsel's position on this proposition may be correct, and would probably follow if the act on which he relies applied to the Osage Tribe of Indians. It is to be noted, however, that the act relied upon provides that it shall be operative in so far as not otherwise provided especially for all allotments in severalty to Indians outside of the Indian Territory. As we view it, the Act of June 28, 1906, *supra,* was an act especially providing for the allotment in severalty of lands of this Indian Tribe, and hence the act relied upon by counsel to relieve these funds of garnishment for the satisfaction of this debt is not applicable, and applies only to those Indians outside of the Indian Territory where no such specific act with reference to the allotment of their lands in severalty has been passed. The certificate of competency provided for by the special act relating to this tribe of Indians and their lands authorized the member to whom it was issued to sell and convey any lands deeded him by reason of that act, except his homestead, which authority was granted only after a finding that the member was fully competent and capable of transacting his or her own business, and caring for his or her own individual affairs. The land was thereafter made subject to taxation, and the member was vested with the full right to manage, control, and dispose of it the same as any citizen

of the United States. This act contains no limitation upon which could be predicated an affirmance of the judgment in this case; and, as the act relied upon by counsel in our judgment does not apply to these people nor their lands, the judgment of the trial court must of necessity be reversed, and the case is remanded, with instructions to set aside its order and enter one in conformity with this opinion.

HAYES, C. J., and KANE and TURNER, JJ., concur; WILLIAMS, J., absent.