**WAH-HRAH-LUM-PAH v. TO-WAH-E-HE.**

No. 9510—Opinion Filed Feb. 10, 1920.

(Syllabus by the Court.)

1. **Indians — Restrictions on Alienation—Wills.**

It is well settled that a conveyance executed in violation of restrictions is void, and conveys no title to the grantee. The restrictions are a matter of governmental policy,

and therefore no rule of property will avail to defeat them. A general restraint on alienation in the act of Congress will be construed as extending to devises by will.

## 2. Same—Osage Indians—Contract to Make Will—Validity Against Heirs.

Where, under the Osage allotment act, a restricted Indian was incapable of alienating his restricted lands, or disposing of either his lands or his Osage trust funds by will, without the approval of the Secretary of the Interior, a court of equity will not enforce a contract to make a will to such property, entered into by such Indian during his lifetime, against his widow and heir, who was not a member of the Osage Tribe of Indians.

Error from District Court, Osage County; R. B. Boone, Judge.

Action by Wah-hrah-lum-pah, otherwise known as Mrs. Francis Claremore, against Martha Washington To-wah-e-he. Judgment for defendant, and plaintiff brings error. Affirmed.

Grinstead & Scott, for plaintiff in error.

Leahy, MacDonald, Burnette & Files, for defendant in error.

KANE, J. This was a suit in equity, commenced by the plaintiff in error, plaintiff below, against the defendant in error, defendant below, for the purpose of compelling the specific performance of a contract to make a will.

Hereafter, for convenience, the parties will be designated "plaintiff" and "defendant," respectively, as they appeared in the trial court.

The court below sustained a general demurrer to the petition of the plaintiff, and upon the plaintiff electing to stand on his petition, entered judgment dismissing her cause of action, to reverse which this proceeding in error was commenced.

It is conceded by counsel for the defendant that, eliminating the Indian question involved in this action, the petition states facts sufficient to constitute a cause of action, so we will examine the grounds for reversal presented for consideration in the light of this concession.

The plaintiff alleged in her petition that she entered into a verbal contract with one To-wah-e-he, a full-blood Osage Indian, by the terms of which To-wah-e-he agreed that he would cause all his property to pass by will to the plaintiff upon his death, in consideration for plaintiff taking care

of and providing for him during his lifetime. The petition further alleged that the property forming the subject of the contract consisted of lands allotted to To-wah-e-he under the Osage allotment act and certain moneys segregated and placed to the credit of Gra-to-se-me, the former wife of To-wah-e-he, and certain lands which To-wah-e-he inherited from said former wife; that both To-wah-e-he and his former wife were members of the Osage Tribe of Indians and acquired the lands and funds involved under the act of Congress of 1906. It further appeared that neither Gra-to-se-me nor To-wah-e-he had obtained certificates of competency under said act of Congress during the lifetime of To-wah-e-he, and that the contract relied upon was not approved by the Secretary of the Interior.

Both parties agree that, in these circumstances, the lands and funds forming the subject of the contract in question were restricted Osage Indian property in the hands of To-wah-e-he, but it is contended on the part of counsel for the plaintiff that, inasmuch as the defendant, the second wife of To-wah-e-he, is not an Osage Indian nor a member of the Osage Tribe of Indians, all Osage Indian property taken by her by descent from her husband became at once unrestricted as provided by section 6, act of Congress approved April 18, 1912 (37 Stat. at L. 86), and in her hands became subject to the general rule that a contract to make a will based upon a sufficient consideration creates a binding obligation that will be enforced against the heirs, devisees, and legatees of the party breaching such contract. Lynn v. Brown, 38 Okla. 209, 132 Pac. 810; Williams v. Hewett, 74 Oklahoma, 181 Pac. 286; Levindale Lead & Zinc Mining Co. v. Coleman, 241 U. S. 432, 60 L. Ed. 1080; and McCurdy v. United States, 246 U. S. 263, 62 L. Ed. 707, are cited in support of the general rule.

On the other hand, counsel for defendant contends that the specific performance of a contract made by a restricted Osage Indian with reference to his restricted lands and trust funds will not be enforced by a court of equity, for the reason that such a contract is in direct violation of the letter and the spirit of the act of Congress under which the lands were allotted and the funds were segregated, and for the further reason that said lands cannot be alienated in any other manner than that provided by said act of Congress.

As there is no disagreement between coun-

sel that under the provision of the above mentioned acts of Congress all of the lands mentioned in the plaintiff's petition were inalienable, and that the funds mentioned could not be disposed of by To-wah-e-he by will without the approval of the Secretary of the Interior, it will not be necessary to set out these acts in full or to refer to them at any great length.

If we understand the contention of counsel for the plaintiff, they base the validity of their contract solely upon the fact that the defendant, who inherited the lands and funds from To-wah-e-he, was not a member of the Osage Tribe. While the petition does not show whether or not the defendant was a member of the Osage Tribe, it so stated in the brief of counsel without contradiction, and we will assume that this is correct. We are unable, however, to perceive how the admission that the lands and funds involved became unrestricted property in the hands of the defendant can in any wise affect the contract made by To-wah-e-he, during his lifetime, in relation thereto. Under the Osage allotment act hereinbefore referred to, To-wah-e-he could not alienate the lands, nor dispose of either the lands or the funds by will, without the approval of the Secretary of the Interior, which it is admitted was not secured. If the unapproved contract with To-wah-e-he could be enforced, it is clear that a way would be opened whereby every member of the Osage Tribe of Indians could effectually dispose of their restricted lands and trust funds by this means. This would enable them to do indirectly what they are not permitted to do directly without the approval of the Secretary of the Interior. The act of Congress is not only for the benefit of the allottee, but also for the benefit of his heirs, and if such a contract could be sustained and the specific performance thereof decreed, then, under the same reasoning, contracts could be made with full-blood members of the Osage Tribe of Indians, who have not certificates of competency, whereby the allottee could contract for improvements and deliver possession of the lands, and agree that at his death the party contracting with said allottee could take his entire estate, and in this manner the provisions of the allotment act, enacted for the benefit of the Indians and their heirs, would be of no force or consequence whatever.

Mr. Bledsoe, in his Indian Land Laws, section 154, and 14 R. L. C., section 28, deduce from the authorities that it is well settled that a conveyance executed in violation of restrictions is void, and conveys no title to the grantee. The restrictions are a matter of governmental policy, and therefore no rule of property will avail to defeat them. A general restraint on alienation in the act of Congress will be construed as extending to devises by will.

If, under the act of 1912, To-wah-e-he was incapable of alienating his restricted lands or disposing of either his lands or his share of the Osage trust fund by will, without the approval of the Secretary of the Interior, we do not think a court of equity would be justified in enforcing an unapproved contract to make a will, entered into by such Indian during his lifetime, which would have the same effect, against the wife and heir of such Indian, merely because she was not a member of the tribe.

For the reasons stated, the judgment of the court below is affirmed.

OWEN, C. J., and JOHNSON, PITCHFORD, HIGGINS, BAILEY, and McNEILL, JJ., concur.